[Cite as *In re A.D.*, 2020-Ohio-526.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: A.D.
     G.D.

C.A. No.     19CA011547

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    18JC55282
               18JC55283

DECISION AND JOURNAL ENTRY

Dated: February 18, 2020

TEODOSIO, Judge.

{¶1} Appellant, D.D. ("Father"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated his parental rights and awarded permanent custody of two of his minor children to Lorain County Children Services ("LCCS"). This Court affirms.

I.

{¶2} Father is the biological father of several children, but only two of them are parties to this appeal: A.D., born April 1, 2008; and G.D., born December 3, 2009. The children's mother ("Mother") did not appeal from the trial court's judgment.

{¶3} Father and Mother had a prior juvenile court case with LCCS, but the complete record from that case was not introduced into evidence in this case and, therefore, is not part of the record on appeal. The details about the prior case are limited to the select exhibits and testimony that were admitted into evidence during the final hearing in this case. These children

and several other siblings were removed from their parents' custody during July 2015 because, among other reasons, Mother had a substance abuse problem and Father was using excessive physical discipline on two older half-siblings of these children. These two children were later adjudicated neglected and dependent and placed in the temporary custody of an interested third party, D.M.

{¶4} The parents did not comply with the reunification requirements of the case plan, so A.D. and G.D. were placed in the legal custody of D.M. on June 12, 2017. At that time, the trial court suspended visitation by both Father and Mother until they demonstrated progress on certain case plan goals. Specifically, as to Father, the trial court ordered:

> Contact and visitation by the father is suspended. Father can apply to the Court for the reinstatement of contact and visitation, which may be granted only upon a showing of meaningful participation in counseling, anger management and parenting instruction.

{¶5} Throughout the following year, Father did not participate in any counseling, anger management, or parenting classes. He refused to engage in any services because he continued to deny that he had any parenting problems. Father did not have contact or visitation with these two children, nor did he ask the trial court to reinstate his visitation and/or contact.

{¶6} During August 2018, D.M. informed LCCS that she could no longer care for the children. On August 23, 2018, LCCS filed complaints to allege that A.D. and G.D. were neglected and dependent because D.M. could no longer care for them and she had not been meeting their basic needs prior to contacting LCCS. LCCS initially sought temporary custody of the children. On October 2, 2018, however, the agency filed an amended complaint to seek permanent custody as the initial disposition for both children.

{¶7} A.D. and G.D. were later adjudicated neglected and dependent. The matter ultimately proceeded to a dispositional hearing on the complaint for permanent custody.

Following the hearing, the trial court terminated parental rights and placed A.D. and G.D. in the permanent custody of LCCS. Father appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT IT IS IN THE CHILDREN'S BEST INTEREST TO GRANT PERMANENT CUSTODY OF THEM TO [LCCS] RATHER THAN PLACE THE CHILDREN IN THE LEGAL CUSTODY OF FATHER. IN DOING SO, THE TRIAL COURT ERRONEOUSLY FOUND THAT THE FIRST PRONG OF THE PERMANENT CUSTODY TEST WAS MET. THE DECISION OF THE TRIAL COURT IS THEREFORE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶8}** Father challenges the trial court's decision on both prongs of the permanent custody test. Although he states both an abuse of discretion and manifest weight of the evidence standard of review, his argument focuses on whether the trial court's findings on each prong of the permanent custody test were supported by clear and convincing evidence. This Court will not reverse the trial court's factual findings unless they were against the manifest weight of the evidence. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

**{¶9}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the

temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶10} The trial court found that the first prong of the permanent custody test was satisfied for two alternative reasons: Father failed to remedy the conditions that caused the children to remain placed outside his custody, R.C. 2151.414(E)(1); and Father abandoned the children, R.C. 2151.414(E)(10). Father challenges both findings.

{¶11} If one of the trial court's first prong findings is supported by the record, however, the parent suffers no prejudice from any error in the trial court's alternative findings. *See*, *e.g.*, *In re R.R.*, 9th Dist. Summit No. 29279, 2019-Ohio-2202, ¶ 10; *In re U.D.*, 9th Dist. Summit No. 29195, 2019-Ohio-512, ¶ 9. This Court will confine its review to the trial court's finding under R.C. 2151.414(E)(10) that Father abandoned his children.

{¶12} R.C. 2151.011(C) provides that children are "presumed abandoned when the parents of the child[ren] have failed to visit or maintain contact with [them] for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." The evidence was not disputed that Father had no contact with his children between June 12, 2017 and August 23, 2018, when LCCS filed its initial complaint in this case.

{¶13} At the hearing, Father attempted to rebut the presumption of abandonment by arguing that he was prevented from contacting his children because the trial court suspended his

contact and visitation on June 12, 2017, when it awarded legal custody to D.M. Many years ago, the Ohio Supreme Court adopted a dictionary definition of "abandon," requiring a willful relinquishment of rights, to conclude that a mother who was involuntarily confined in a state mental hospital did not abandon her children. *In re Masters*, 165 Ohio St. 503, 505-506 (1956). Father similarly argued that his lack of contact with his children was not voluntary or willful because the trial court's order suspending his visitation prevented him from having contact with his children. Although Father attempted to characterize the order suspending his contact as an absolute "no contact" order, his argument is not persuasive, given the particular facts of this case. The trial court entered an order that conditionally suspended Father's visitation and contact:

> Contact and visitation by the father is suspended. Father can apply to the Court for the reinstatement of contact and visitation, which may be granted only upon a showing of meaningful participation in counseling, anger management and parenting instruction.

{¶14} The suspension of Father's contact was explicitly conditioned on him attempting to remedy his parenting problems by engaging in specific services. Father admitted at the 2019 hearing that, after the trial court issued this order in 2017, he did not attempt to engage in any counseling, anger management, or parenting instruction. His stated reason for failing to engage in those services was that he did not believe that they were necessary. He continued to deny that he had a problem controlling his anger or that he had used excessive physical discipline on any of his children.

{¶15} Consequently, the trial court did not err in finding that Father abandoned his children, given the specific facts of this case. The decision in this case does not address whether a trial court could properly find abandonment based on a similar suspension order under a different set of facts. The outcome of this case might have been different if Father had made some attempt to comply with the conditions of the order, but was unsuccessful, or factors outside

his control prevented him from complying. This Court's decision is explicitly based on Father's complete lack of effort to comply with the conditions that could have permitted him to resume contact with these children.

{¶16} Next, Father challenges the trial court's finding that permanent custody was in the best interest of A.D. and G.D. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, the need for permanence in their lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. None of the factors set forth in R.C. 2151.414(E)(7) through (11) apply to the facts of this case.

{¶17} Father had no interaction with these children for almost two years by the end of the hearing. The evidence was not disputed that Father did not visit, call, send letters, or otherwise communicate with these children for more than a year before LCCS filed its complaint in this case. Father continued to dispute the trial court's 2015 finding that these children were neglected and dependent because, among other reasons, he used excessive physical discipline on some of the older siblings. That finding was necessarily supported by clear and convincing evidence presented at a contested adjudicatory hearing, at which Father was represented by counsel. *See* Juv.R. 29(E)(4).

{¶18} While these children lived with Father prior to their removal in 2015, they had either suffered physical abuse or witnessed their siblings suffering abuse at the hands of Father. A.D. and G.D. were both in counseling and had discussed memories of Father using excessive

physical discipline on them, as well as their older siblings. They also said that they were afraid of Father.

{¶19} Father emphasizes that both children had expressed a desire to go home. Additional testimony at the hearing clarified, however, that A.D. wanted to live with his parents again only if they had resolved their problems, which they had not. Moreover, both children had told the caseworker that they just wanted to be part of a family again. The guardian ad litem opined that permanent custody was in the best interest of both children because the parents were not capable of providing them with a safe and secure home.

{¶20} Because the children's custodial history had included nearly four years living outside the custody of their parents, in several different placements, they needed a legally secure permanent placement. Their parents were not prepared to provide them with a safe and stable placement and LCCS had been unable to find any suitable relative who was willing and able to do so. Consequently, the trial court found that a legally secure permanent placement would be achieved by granting permanent custody to LCCS.

{¶21} Father has failed to demonstrate that the trial court lost its way by finding that he had abandoned A.D. and G.D. and that permanent custody was in their best interest. Father's assignment of error is overruled.

III.

{¶22} Father's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

LORIE K. BROBST, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and PREETHI KISHMAN, Assistant Prosecuting Attorney, for Appellee.

LINDSEY NICHOLLS, Attorney at Law, for Mother.

JEANETTE ROBINSON, Guardian ad Litem.